# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 7, 2006

## STATE OF TENNESSEE v. TERRANCE PATTERSON

**Appeal from the Criminal Court for Shelby County**
**No. 05-02787    Arthur T. Bennett, Judge**

---

**No. W2005-01638-CCA-R3-CD  - Filed September 17, 2007**

---

The Shelby County Grand Jury indicted Appellant for aggravated arson and vandalism over $10,000.00, but below $60,000.00.  At the conclusion of a jury trial, Appellant was convicted as charged.  The trial court sentenced Appellant to twenty-five years as a Range I Standard Offender for the aggravated arson conviction and eight years as a Range II Multiple Offender for the vandalism conviction.  The trial court also ordered these sentences to be served consecutively. Appellant now appeals these judgments arguing that: (1) there was insufficient evidence to support his convictions; (2) evidence of impeachment by prior conviction was improperly admitted; (3) the trial court improperly allowed the amendment of the indictment; and that (4) the trial court erred in enhancing the sentence and in imposing consecutive sentences.  We have thoroughly reviewed the record and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Phyllis Aluko, Assistant Public Defender, for the appellant, Terrance Patterson

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In November of 2003, Appellant was living with his girlfriend, Regina Gardner, in the Stoneridge Apartments in Memphis.  Appellant and Gardner had a rocky relationship due to his lying and stealing her rent money.  In early November, Appellant borrowed money from a neighbor, Justin Nichols.  When Appellant had not repaid the money, Nichols' girlfriend, Sarah Taylor, called

Gardner about the money. On November 13, 2003, Gardner came over to Nichols' apartment and told Nichols and Taylor she was afraid of Appellant. While she was at their apartment, Appellant came over and spoke with Nichols outside. Appellant told Nichols he was angry that Taylor called Gardner about the money. Appellant left at the conclusion of the conversation.

Gardner called her friend Farrah Jones to come and get her. The two women went to the police station so that Gardner could get a police escort to kick Appellant out of her apartment. Gardner and the police went to her apartment where she packed Appellant's belongings and set them outside the apartment door.

Nichols and Taylor left their apartment later that day. As they were driving away, they saw Appellant with bags of clothes around and inside his car. Appellant stopped them as they were driving away. Appellant told them they should not have called Gardner about the money he owed Nichols. The three began to argue. During the argument, Appellant told them, "I'll take care of you. I'm going to light this whole complex up." Nichols and Taylor drove away and went down the street to call the police because Appellant threatened Taylor during the argument. As they were talking to the police, Nichols and Taylor saw two fire trucks drive past. They gave their apartment number to an officer who went to check on their apartment. When the officer returned, he told them that their apartment was on fire and the fire department was already there.

After leaving Appellant's belongings outside, Gardner went to Jones's house. While at Jones's house, Gardner received several threatening telephone calls from Appellant. Because of the threatening telephone calls, Gardner and Jones went to Indianola, Mississippi, where Gardner's mother lived. On the way to Indianola, they were often out of range for cellphone service, and Gardner turned off her phone. When they arrived in Indianola, Gardner was able to retrieve a message from Appellant. The message stated, "when you get back, your apartment is not going to be here. It is burning now, bitch." Gardner called Nichols and Taylor to check on her apartment. They told her that her apartment was indeed on fire.

Private Craig Eddins of the Memphis Fire Department responded to a 911 call at the Stoneridge Apartments. He pulled the hose to the apartment where the fire was located. He kicked the door in because it was locked. He proceeded to the bedroom area where the fire was. After putting out the fire, Private Eddins saw that the bed, window, and wall were all burned. He also thought the apartment had been ransacked.

Investigator Kenneth Maurice Dabney with the Memphis Fire Department investigated the fire in Gardner's apartment. He located the origin of the fire as a bedroom in the apartment. The bed in that room had significant charring and burns. That particular bedroom was also in disarray. The closet was completely empty and clothes were on the floor as well as the bed. Drawers from a piece of furniture in the room were piled on the bed with the clothes. These items had been mostly consumed by fire. Three-fourths of the mattress had also been consumed by fire. He concluded that the fire had been intentionally set. He came to this conclusion because the fire had not burned very

long and that a lighter or match was used because the fire began on the bed itself on which the items had been piled.

The manager of the Stoneridge Apartments, Jennifer Hatley, viewed the damage caused by the fire on November 13, 2003. The estimate from the insurance company for repairs was $99,700. This amount was under the complex's deductible of $100,000. Therefore, none of the damage to the apartment building were covered by insurance.

Gardner and Jones returned to Memphis the next morning. They went to see Gardner's apartment with a police officer. There was nothing that could be salvaged in her apartment. The value of the items in her apartment totaled $23,734. After returning to Memphis, Gardner also met with James Edward Greene with the Memphis Fire Department. He took her statement and listened to the voice mail message Appellant left on her telephone telling her that he set her apartment on fire. The investigators decided Appellant was the main suspect, and he was arrested on March 2, 2004.

Appellant denied that he set Gardner's apartment on fire. He denied that he told Gardner or anyone else that he was going to burn down the apartment complex. However, one of Appellant's girlfriends stated that Appellant called her from jail after he was arrested for these charges and asked her to lie and say she was with him the day of the fire. She refused.

The Shelby County Grand Jury indicted Appellant for one count of aggravated arson and one count of vandalism over $10,000. On May 20, 2005, a jury found Appellant guilty of both aggravated arson and vandalism between $10,000 and $60,000. At the conclusion of a sentencing hearing held on June 30, 2005, the trial court sentenced Appellant as a Range I Violent Offender to twenty-five years for the aggravated arson conviction to be served consecutively to eight years for the vandalism conviction.

Appellant timely appealed the judgments of the trial court.

## ANALYSIS

Appellant argues four issues on appeal: (1) whether there was sufficient evidence to support his convictions; (2) whether evidence of impeachment by prior conviction was properly admitted; (3) whether the trial court improperly allowed the amendment of the indictment; and (4) whether the trial court erred in enhancing the sentence and in imposing consecutive sentences.

### Sufficiency of the Evidence

The Appellant argues that the evidence was insufficient to support his conviction. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*,

839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the appellant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

Appellant specifically argues that the evidence was insufficient because there was no direct evidence, and the State had to rely upon circumstantial evidence. Of course, a criminal offense may be established exclusively by circumstantial evidence. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). However, the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded." *Jones*, 901 S.W.2d at 396; *see also*, *e.g.*, *Tharpe*, 726 S.W.2d at 900. Our supreme court stated that to establish a defendant's guilt through circumstantial evidence "[a] web of guilt must be woven around the [accused] from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the [accused] beyond a reasonable doubt." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971). A jury makes the determination of what weight should be given to circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958); *see also State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

The jury convicted Appellant of one count of aggravated arson and one count of vandalism between $10,000 and $60,000. T.C.A. § 39-14-301 defines arson as someone "knowingly damag[ing] any structure by means of a fire or explosion: (1) [w]ithout the consent of all persons who have a possessory, proprietary or security interest therein . . . ." T.C.A. § 39-14-301(a)(1). T.C.A. § 39-14-302 defines aggravated arson as arson, as defined above, "[w]hen one (1) or more persons are present therein . . . ." T.C.A. § 39-14-302(a)(1). Tennessee Code Annotated section 39-14-408(a) defines vandalism as, "[a]ny person who knowingly causes damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent . . . ." Under T.C.A. § 39-14-408, damage is "destroying, polluting or contaminating property."

Appellant's argument is that the State's proof was not sufficient to prove that he was the actual perpetrator of the arson and vandalism because there was no direct evidence, but only circumstantial evidence. Appellant relies on *State v. Ronald David Lee*, No. 03C01-9410-CR-0039, 1995 WL 395840, (Tenn. Crim. App., at Nashville, July 6, 1995), to support his argument. The appellant in *State v. Ronald David Lee* was convicted of aggravated arson in addition to resisting arrest and criminal trespass. Prior to the incident from which the conviction stemmed, the appellant threatened the owner of the Matchbox Lounge. The owner banned the appellant from the business. The appellant and another individual fought outside the Matchbox Lounge on March 15, 1992. The owner went out to the parking lot. The appellant began threatening the owner and ran away. The appellant later returned carrying a double-bladed axe and told the owner, "I'm gonna break every window in the place. You know, everybody in there, blow 'um up or burn 'um up." *Ronald David Lee*, 1995 WL 395840 at *1. Shortly after the appellant left the Matchbox Lounge, it was discovered that the roof of an apartment building next to the Matchbox Lounge was on fire. The fire was extinguished with a garden hose. On appeal, the appellant argued that the evidence was insufficient to support his conviction. This Court agreed with the appellant. This Court stated that the circumstantial evidence was not sufficient to prove that the identity of the perpetrator was that of the appellant. *Id.* at *4. This Court stated that the threats made by the appellant were specifically to Matchbox Lounge and its owner. *Id.* The threats were not made to the apartment building next to the Matchbox Lounge. *Id.* This is where the case at hand is different from *Ronald David Lee*. In the current case, Appellant specifically made threats toward Gardner and her apartment, which was the location of the fire.

There are cases more similar to the case at hand in which this Court has concluded that circumstantial evidence is sufficient to prove that the appellant was the perpetrator of arson. In both *State v. Alfred Eugene Bradley*, No. E2002-02840-CCA-R3-CD, 2004 WL 223399 (Tenn. Crim. App., at Knoxville, Feb. 4, 2004), *perm. app. denied*, (Tenn. Sept. 7, 2004) and *State v. Timothy V. Bowling*, No. 03C01-9805-CR-00167, 1999 WL 782470 (Tenn. Crim. App., at Knoxville, Sept. 28, 1999), as in the case at hand, the appellants were the jilted boyfriends of the victims. In both cases, the appellants made direct threats against the victims and their houses.

In *Alfred Eugene Bradley*, the appellant and his girlfriend broke up. She called the police to escort the appellant and his belongings from her residence. Following his removal, the appellant threatened his former girlfriend. The night of the fire, the appellant called his former girlfriend over twenty times and threatened her repeatedly. The fire was caused by an individual breaking two windows in the residence and pouring a gasoline-range product in the rooms and setting the substance on fire. The appellant was found shortly after the fire a few streets away with a severely cut arm and gasoline-range product on his clothes. *Alfred Eugene Bradley*, 2204 WL 223399 at *8. This Court concluded that this circumstantial evidence was sufficient to support the appellant's conviction. *Id.*

In *Timothy V. Bowling*, the appellant and his on and off girlfriend for twelve years were living in separate residences. The appellant's former girlfriend and one of their children testified against the appellant in court. Following their testimony, the appellant began to make threatening

telephone calls to his former girlfriend and their children. The appellant got into an altercation at a nightclub with his former girlfriend's brothers, and again threatened her life. Other witnesses at the nightclub heard the appellant say he "would burn Davis street down." Timothy V. Bowling, 1999 WL 782470 at *2. Davis Street is where his former girlfriend lived. The appellant's former girlfriend began staying with friends. One morning she received a call from the fire department that her house had been set on fire and that the bedroom was in disarray and her clothes had been cut up. There was also a threatening message written on the wall. In addition, there was a witness at trial who saw the appellant near the residence on the night of the fire. *Id.* at *7. This Court concluded that this circumstantial evidence was sufficient to support the appellant's conviction. *Id.*

The circumstantial evidence in this case, when taken in a light most favorable to the State, is sufficient to support the conclusion that Appellant was the perpetrator and exclude all other reasonable theories. The evidence showed that Appellant was angry with Gardner for telling him to leave her apartment. The day of the fire, she called for a police escort to remove Appellant's belongings from her apartment. Shortly before the fire was set, Nichols and Taylor saw Appellant retrieving his belongings. In addition, he told them that he was "going to light this whole complex up." Shortly thereafter, Nichols and Taylor saw fire trucks going toward the apartment complex. In the meantime, Gardner left Memphis to go to her mother's house. Throughout the day she repeatedly received threatening telephone calls from Appellant. His final message was to tell her that her apartment was going to be gone when she returned and that it was burning at that exact moment. Gardner was able to save the telephone message and replay it for the fire department investigators. The fire department investigators concluded that the fire was set intentionally. Gardner's clothes and other belongings had been set on the bed, which was the origin of the fire. The investigators concluded that the fire did not smolder, but instead burned very hot for a short period of time before being extinguised. According to one of Appellant's girlfriends, he tried to use her to establish a false alibi. This Court concludes that this is more than sufficient evidence from which the jury could conclude that Appellant was the perpetrator of the aggravated arson in this case.

Therefore, this issue is without merit.

## Prior Conviction

Appellant argues that the trial court erred in allowing the State to impeach him with convictions of introduction of contraband (drugs) into a penal institution and criminal attempt to commit second degree murder. Appellant argues that this impeachment was improper because the probative value of the convictions is outweighed by their unfair prejudicial effect. The State argues that Appellant's counsel brought out the convictions on direct examination and, therefore, the issue is without merit. In the alternative, the State argues that prejudicial effect does not outweigh the probative value.

Rule 609 of the Tennessee Rules of Evidence states that the credibility of a witness may be attacked by evidence of prior convictions if certain prerequisites are met. First, the conviction must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or false

statement. Tenn. R. Evid. 609(a)(2). Secondly, if the witness to be impeached is a criminal defendant, the State must give notice prior to trial of its intent to use the conviction for impeachment. Tenn. R. Evid. 609(a)(3). Finally, upon request, the court must determine that the probative value of the prior conviction on the issue of credibility outweighs its prejudicial effect on substantive issues. Tenn. R. Evid. 609(a)(3). Rule 609(b) also requires that the convictions have been within the ten years previous to a defendant's current charge.

Thus, Rule 609(a)(3) of the Tennessee Rules Evidence grants special treatment to criminal defendants when it comes to impeachment with prior convictions. The reason for this is obvious. There is a concern that if a jury knows of a defendant's previous criminal record, the panel might conclude that the defendant has a propensity to commit crimes and convict on this basis rather than on the evidence of the charges before them. This concern is greatly heightened when all or some of the prior convictions are for crimes identical to those for which the defendant is on trial. *State v. Walker*, 29 S.W.3d 885, 891 (Tenn. Crim. App. 1999). Therefore, Rule 609(a)(3) serves as a screening mechanism whereby prior convictions are admitted for impeachment when the potential for undue prejudice is outweighed by the probity of the conviction on the question of the defendant's credibility. Conversely, even prior convictions with a great deal of probity on the question of the defendant's credibility are often ruled inadmissible as impeachment material because the danger of undue prejudice is too great.

A trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility. *State v. Farmer*, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). If "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." *Long v. State*, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). A trial court's ruling under Rule 609 will not be reversed absent an abuse of discretion. *See Johnson v. State*, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979).

In this case, prior to trial, the trial court held a hearing on Appellant's motion in limine to exclude his prior convictions for introduction of contraband into a penal institution (drugs) and criminal attempt of first degree murder. At the conclusion of the hearing, the trial court concluded that Appellant could be questioned about the convictions because the convictions were "both felonies within the ten-year period that is allowed." The trial court failed to rule specifically as to whether the conviction's probative value outweighted its unfair prejudicial effect When Appellant took the stand during the trial, his trial counsel brought out the convictions immediately. Appellant stated what the convictions were and that he had pled guilty to the charges. The State did not ask about the convictions on cross-examination. At the hearing on the motion for new trial, the trial court did state that it had determined that the probative value of the prior convictions outweighed their prejudicial effect.

The trial court was correct in its determination that the previous convictions were punishable by more than one year of confinement and that they occurred within the ten years before the current charges. The only question is whether the probative value of the introduction of these convictions

-7-

outweighs the prejudicial effect. In *State v. Waller*, 118 S.W.3d 368 (Tenn. 2003), our supreme court stated:

> Two criteria are especially relevant in determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense. *Mixon*, 983 S.W.2d at 674. A trial court should first analyze whether the impeaching conviction is relevant to the issue of credibility. *Id.* . . . To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or false statement.

118 S.W3d at 371.

A panel of this Court has previously determined that a conviction for introducing contraband into a penal facility is not a crime of "dishonesty or false statement." *State v. Larry Ballentine*, No. M2004-02175-CCA-R3-CD, 2006 WL 264977, at *5 (Tenn. Crim. App., at Nashville, Jan. 31, 2006), *perm. app. denied* (Tenn. May 30, 2006). We agree. Introduction of contraband into a penal facility requires that an individual "knowingly and with unlawful intent take, send or cause to be taken into [the facility] . . . any weapons ammunition, explosives, intoxicants, legend drugs, or any controlled substances," or possess any of the above materials in such a facility. T.C.A. § 39-16-201(b)(1), (2). This is not a crime of dishonesty or false statement. Therefore, its probative value is very limited in terms of the balancing test. However, the prejudice through the use of this conviction is also very limited, as this conviction is not remotely similar to that for which Appellant was on trial. Although the question is a close one, we find that the trial court did not abuse its discretion in denying Appellant's *motion in limine*.

The trial court also approved the State's use of a prior conviction for attempted first degree murder. A conviction for attempted first degree murder implicates a crime of violence. "[F]elonies of a violent nature reflect on the moral character of a witness [, and] . . . this evidence is not usually without probative value." *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). Furthermore, the crime of attempted first degree murder bears no similarity to the crime for which Appellant was charged. Accordingly, we see no abuse of discretion in permitting impeachment use of the attempted first degree murder conviction, and we affirm the trial court's ruling.

**Amendment of the Indictment**

Appellant also argues that the trial court erred in allowing the State to amend the indictment on the day of trial. Immediately before the trial began, the State moved to amend the indictment as to count 1, aggravated arson. The original indictment listed the victim as Ms. Gardner as opposed to the Stoneridge Apartments and listed Gardner's apartment number, but the State wanted just the

address of the structure, with no apartment numbers included. Appellant did not object to the replacement of Gardner's name with Stoneridge Apartments, but did object to the removal of the apartment number with no reference to particular apartments. The trial court overruled Appellant's objection and allowed the indictment to be amended as the State requested primarily because the damage was to one apartment building. Appellant now argues that the trial court erred in allowing the indictment to be amended so that there is no specific victim listed. The State argues that because the indictment did not charge an additional or different offense, the defendant was not surprised or prejudiced by the amendment.

Rule 7(b) of the Tennessee Rule of Criminal Procedure states that "[a]n indictment, presentment or information may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches." *See* Tenn. R. Crim. P. 7(b). After jeopardy attaches the clear language of Rule 7(b) prohibits any amendments to the indictment. In a jury trial jeopardy attaches when the jury is sworn. *Ahern v. Ahern*, 15 S.W.3d 73, 80 (Tenn. 2000).

In the instant case, the hearing during which the State moved to amend the indictment occurred before the *voir dire* of the jury. Therefore, jeopardy had not attached. In addition, there was no additional or different offense charged, nor was a substantial right of the accused prejudiced. The amendment merely corrected the identity of the victim of the charged crime. We conclude that the replacement of Gardner's apartment number with that of a list of the apartments affected is not necessary because the address of the apartment building was included in the indictment. Appellant was given adequate notice of the crime with which he was being charged and there is nothing to suggest he was prejudiced by the amendment. This issue is without merit.

## Sentencing Review on Appeal

Appellant's final issue is that he believes the trial court erred in enhancing his sentence by applying six enhancement factors and erred in imposing consecutive sentences. The State argues that the trial court properly enhanced Appellant's sentence and properly sentenced him to consecutive sentences.

We begin our analysis with a brief discussion of recent changes in Tennessee's sentencing statutes. In response to the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee General Assembly amended the T.C.A. § 40-35-210 so that all felonies now have a presumptive sentence beginning at the minimum sentence within the sentencing range. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006); see also 2005 Tenn. Pub. Act ch. 353, § 18. This amendment became effective on June 7, 2005. The General Assembly also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Acts ch. 353, § 18. In addition, the legislation provides that a criminal defendant who committed a criminal offense on or after July 1, 1982, but

is not sentenced until after June 7, 2005, may elect to be sentenced under these provisions by executing a waiver of their *ex post facto* protections. *Id.* In the case *sub judice*, Appellant signed such a waiver and, therefore, the new act applies to our review of his sentencing.

At the outset it should also be noted that the 2005 amendments to our sentencing laws curtailed to some degree the grounds that may form the basis on an appeal of a sentencing decision. *Compare* T.C.A. § 40-35-401 (2003) *with* T.C.A. § 40-35-401 (2006). The amended T.C.A. § 40-35-401(b) (2006) differs on one key point:

> (b) An appeal from a sentence may be on one (1) or more of the following grounds:
> (1) The sentence was not imposed in accordance with this chapter;
> (2) The sentence is excessive under the sentencing considerations set out in §§ 40-35-103 and 40-35-210; or
> (3) The sentence is inconsistent with the purposes of sentencing set out in §§ 40-35-102 and 40-35-103.

Prior to 2005, T.C.A. § 40-35-401(b) (2003) stated, "An appeal from a sentence may be on one (1) or more of the following grounds: (1) The sentence was not imposed in accordance with this chapter; or (2) *The enhancement and mitigating factors were not weighed properly*, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." T.C.A. § 40-35-401(b) (2003) (emphasis added).

We now analyze the amended statute to determine on what grounds a criminal defendant may seek relief from the sentence imposed by the trial court. Generally, when construing a statute, every word within the statute is presumed to "have meaning and purpose and should be given full effect." *State v. Odom*, 928 S.W.2d 18, 29-30 (Tenn. 1996) (quoting *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (Tenn. 1968)). This Court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995); *see also State v. Davis*, 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Carter v. State*, 952 S.W.2d 417, 419 (Tenn. 1997). Furthermore, this Court should construe a statute so that its component parts are consistent and reasonable, and inconsistent parts should be harmonized, where possible. *Odom*, 928 S.W.2d at 30. When the General Assembly has amended a statute, "[i]t is a proper method to determine what the intention of the Legislature was for us to look at prior acts . . . ." *State v. Davidson County*, 277 S.W.2d 396, 401 (Tenn. 1955). In addition, "[w]hen the legislature makes a change in the language of a statute, we must assume that it was deliberate." *State v. Turner*, 193 S.W.2d 522, 527 (Tenn. 2006).

The fact that the General Assembly deleted the language regarding the weighing of enhancement and mitigating factors demonstrates that the General Assembly intended that a defendant may no longer allege as grounds for relief on appeal that the sentencing court erroneously weighed sentencing enhancement factors.

"When reviewing sentencing issues . . . , the appellate court shall conduct a *de novo* review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). This presumption will be virtually irrebuttable if there is a factual basis for the consideration of the enhancement factor, the enhancement factor considered is not an element of the offense, and, in addition, the consideration of the factor is not inconsistent with the purposes of sentencing considerations set out in T.C.A. §§ 40-35-103 and -210.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following *advisory* sentencing guidelines:
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(2006) (emphasis added). With this background in mind we turn to the propriety of the defendant's sentence in this case.

-11-

## Sentencing in the Case Sub Judice

At the sentencing hearing, the trial court found that there was ample factual support for the consideration of six enhancement factors. The trial court considered the following factors: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range; (3) the offense involved more than one victim; (6) the personal injuries inflicted upon, or the amount of damage to the property sustained by, or taken from the victim was particularly great; (10) the defendant had no hesitation about committing a crime when the risk to human life was high; (11) the felony resulted in death or serious bodily injury, or involved the threat of death or serious bodily injury and the defendant has previously been convicted fo a felony that resulted in death or serious bodily injury; and (16) the defendant was adjudicated to have committed a delinquent act, or acts, as a juvenile, that would constitute a felony if committed by an adult. *See* T.C.A. § 40-35-114(1), (3), (6), (10), (11) & (16) (2006). Following these findings, the trial court ordered a twenty-five year sentence as a Range I offender for the aggravated arson conviction and eight years as a Range II offender for the vandalism conviction. The trial court also ordered that the sentences be served consecutively.

In conducting our review of the trial court's sentencing determinations, we must consider the appellant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, any statistical information presented by the administrative office of the courts regarding sentencing practices for similar offenses in the state, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b)(2006).

After reviewing the record in this case, we find ample evidence to support the trial court's consideration of enhancement factors (1), (6), (11) and (16), therefore the trial court could properly consider them with regard to the aggravated arson conviction. The same may be said of factors (1), (11), and (16) with respect to the vandalism conviction. Factor (1), Appellant has a previous history of criminal convictions, is illustrated by a list of previous convictions in his presentence report. This factor was properly considered as to both counts. The consideration as to both counts of factor (6), the amount of damage to property sustained by the victim was particularly great, is supported by the record. The trial court pointed out that the apartment building sustained $99,700 worth of damage, none of which was covered by insurance. The consideration of factor (11), the felony resulted in the threat of serious bodily injury and Appellant has previously been convicted of a felony that resulted in serious bodily injury, is supported by the fact that Appellant had been convicted of attempted second degree murder for an incident involving the shooting of an individual in the head. We agree with the trial court that the fire threatened serious bodily injury to other residents of the apartment and it is a fact that Appellant has a previous conviction involving serious injury. Therefore, factor (11) was properly considered when sentencing on count 1. The trial court's final enhancement factor is factor (16), Appellant committed an act as a juvenile that would be considered a felony if committed as an adult. This factor is also supported by the presentence report. Since all of the

factors outlined hereinabove are supported by evidence in the record, any allegation they were improperly weighed by the trial court is not appealable.

The trial court's consideration of factor (3), that the offense involved more than one victim, would constitute double enhancement. In *State v. Robert Gene Malone*, No. 03-C-01-9110-CR00307, 1992 WL 62014 (Tenn. Crim. App., at Knoxville, March 31, 1992), this Court determined that this enhancement factor is an element of the crime because aggravated arson under T.C.A. § 39-14-302, requires that "one or more persons are present." *Robert Gene Malone*, 1992 WL 62014 at *5. Therefore, the trial court should not have considered this enhancement factor.

The trial court's consideration of enhancement factor (10), Appellant had no hesitation about committing a crime when the risk to human life was high, is also not supported by the record. This Court determined in *Robert Gene Malone* that this enhancement factor should not apply in this situation. *Id.* In that case, we stated that the statute requires that "one or more persons are present" to increase arson to aggravated arson. *Id.* Therefore, the Legislature has already factored in the risk to human life by increasing the penalty range when one or more individual's are present. *Id.* For this reason, the trial court should not have considered this enhancement factor with regard to count 1.

The trial court's consideration of factor (6), the amount of damage to property sustained by the victim was particularly great, is double enhancement with regard to the vandalism charge. Vandalism is punishable as theft. T.C.A. § 39-14-408(c)(1). This Court has held that T.C.A. § 40-35-114(6) cannot be considered as an enhancement factor for theft of property because its consideration constitutes double enhancement. *State v. Grissom*, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). Therefore, it follows that the same enhancement factor cannot be applied to vandalism which is punished as theft. For this reason, the trial court erred in considering enhancement factor (6) in relation to the vandalism conviction.

Aggravated arson is a Class A felony. The sentencing range for a Class A felony as a Range I Standard Offender is fifteen to twenty-five years. The trial court's consideration of four enhancement factors and no mitigating factors more than supports the sentence of twenty-five years for aggravated arson. Vandalism over $10,000 but under $60,000 is a Class C felony. The sentencing range for a Class C felony as a Range II Multiple Offender is six to ten years. The consideration of factors (1) and (6) supports Appellant's sentence to the middle of the applicable range for vandalism over $10,000 but below $60,000.

Therefore, the sentence length imposed by the trial court is appropriate.

Consecutive Sentences

Appellant also argues that the trial court erred in imposing consecutive sentences. The trial court found that Appellant was "a dangerous offender who's behavior indicates little, or no regard for human life and no hesitation about committing a crime in which the risk to human life is high."

The trial court based this decision on the fact that Appellant set an apartment on fire which has shared walls with other apartments and had the potential to injure other individuals and the fact that Appellant told people he was going to set the apartment on fire.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in T.C.A. § 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See State v. Imfeld*, 70 S.W.3d 698, 708-09 (Tenn. 2002); *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

The trial court made adequate findings to support the imposition of consecutive sentencing. Appellant is clearly a dangerous offender with no regard for human life. The imposition of consecutive sentences in this case reasonably relates to the dangerous nature of setting an apartment building on fire and endangering several people.

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE

-14-